# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| John Doe, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:18-cv-2211 |
| | : | |
| v. | : | Judge Carr |
| | : | |
| The University of Toledo, *et al.*, | : | Magistrate Judge Knepp |
| | : | |
| Defendants. | : | |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants the University of Toledo, Ashleigh Wade, Michele Soliz, Katrina Nottke, and Donald Kamm, move this Court to dismiss Plaintiff's claims in their entirety. As explained in the Memorandum in Support, this Court lacks subject matter jurisdiction over some of Plaintiff's claims, and the claims over which this Court has jurisdiction fail to state a claim upon which relief can be granted.

Respectfully submitted,

**MICHAEL DEWINE (0009181)**
**Ohio Attorney General**

*s/ Reid T. Caryer*

_____
REID T. CARYER (0079825)
Assistant Attorney General
Education Section
30 E. Broad St., 16th Floor
Columbus, Ohio 43215
Phone:  (614) 644-7250
Fax: (614) 644-7634
Email: reid.caryer@ohioattorneygeneral.gov

*Counsel for Defendants*

**MEMORANDUM IN SUPPORT**

**I.     Introduction.**

In the early morning hours of March 10, 2018, after having partied and consumed alcohol with his fraternity brothers, Plaintiff John Doe physically assaulted Jane Roe. Plaintiff and Roe were both University of Toledo students at the time. Roe filed a police report which also triggered an investigation by the University's Office of Student Conduct and Community Standards. Following the investigation, the University notified Plaintiff that a hearing would be held to determine if he had broken the University's Student Code of Conduct. The University held a hearing and ultimately found Plaintiff responsible for violating provisions of the Student Code of Conduct regarding causing physical or other harm, sexual misconduct, and underage consumption, and imposed a two-year suspension. Weeks later, the University vacated its decision and decided to hold a new hearing. The day after the University vacated its findings and sanctions against him, Plaintiff initiated this action by filing a Complaint alleging the Defendants violated his procedural due process rights, Title IX of the Education Amendments of 1972, and state law.

Plaintiffs' claims must be dismissed in their entirety. The law is well-established that Plaintiff cannot bring 42 U.S.C. § 1983 claims for money against a state university or an official acting in her official capacity, and that state-law claims cannot be brought against them in this Court. For what remains of Plaintiff's federal claims, those fail because Plaintiff does not plausibly allege violations under the cited discrimination statute.

II.    **Allegations in the Complaint.**

    A.    **The Parties.**

Plaintiff John Doe is a student at the University of Toledo ("UT"), a public university in Ohio. (Doc. 1, ¶¶ 10, 11). Defendant Katrina Nottke is UT's Assistant Director, Title IX and Compliance, and the investigator for the Title IX complaint filed with UT by a female student, Jane Roe, against Plaintiff. (*Id.*, ¶ 14). Defendant Donald Kamm is UT's Director, Title IX and Compliance. (*Id.*, ¶ 13). Defendant Ashleigh Wade is UT's Associate Dean of Students. (*Id.*, ¶ 12). She issued a letter to Plaintiff explaining that a disciplinary panel adjudicated Jane Roe's complaint, found Plaintiff in violation of UT's Student Code of Conduct, and disciplined Plaintiff. (*Id.*, ¶ 103; Doc. 1-4). Defendant Michele Soliz is UT's Assistant Vice President for Student Success and Inclusion who reviewed and denied Plaintiff's appeal. (*Id.*, ¶¶ 15, 126).

    B.    **The Alleged Assault.**

Plaintiff and Jane Roe met in the early morning hours of March 10, 2018. Plaintiff having partied and consumed alcohol with his fraternity brothers, texted Roe to see if she was sober and could take him to get food. Roe obliged. After picking up food, Plaintiff and Roe returned to Plaintiff's fraternity house. Plaintiff claims he was annoyed Roe did not open the door of the fraternity house for him, as he was injured and carrying food and a drink. Thereafter, the two parted ways. (Doc. 1, ¶¶ 41 – 49, 55 – 56).

Roe recounted a different version of events involving an intoxicated Plaintiff. According to Roe, while in the drive-thru lane getting food, Plaintiff grabbed her thigh with a lot of force and caused bruising. Then, back at the fraternity house, Plaintiff bear hugged Roe. After not holding the door for Plaintiff, Plaintiff grabbed Roe's face/neck and verbally accosted her. (*Id.*, ¶¶ 58 – 61).

### C. Investigation and Proceedings against Plaintiff.

Roe reported the incident to UT's Police Department on March 18, 2018. (*Id.*, ¶ 66; Doc. 1-3). During the next two months, UT conducted an investigation into the incident. (*Id.*, ¶ 72). UT provided a copy of its investigation report to Plaintiff on May 18, 2018. (*Id.*, ¶ 73).

On May 25, 2018, UT informed Plaintiff that a hearing would be held before a panel to determine if he had broken Student Code of Conduct policies regarding physical or other harm, sexual misconduct, and underage consumption. (*Id.*, ¶ 92). On July 24, 2018, Plaintiff appeared at his hearing. (*Id.*, ¶ 97). The hearing lasted approximately 90 minutes. (*Id.*, ¶ 98). One week later, UT notified Plaintiff that the panel found him responsible for violating provisions of the Student Code of Conduct regarding causing physical or other harm, sexual misconduct, and underage consumption. (*Id.*, ¶ 103; Doc. 1-4). The panel also imposed a two-year suspension. (*Id.*) Plaintiff appealed the decision on August 1, 2018 to Dr. Michele Soliz. (*Id.*, ¶¶ 124 – 126). On August 22, 2018, Dr. Soliz denied Plaintiff's appeal. (*Id.*) UT later vacated its findings and sanctions and informed Plaintiff that a new hearing would occur on October 19, 2018. (*Id.*, ¶ 134). That hearing date has since been stayed. (Doc. 14).

### D. Procedural History in this Case.

On September 26, 2018, the day after UT vacated its findings and sanctions against him, Plaintiff initiated this action by filing a Complaint against UT, and Nottke, Kamm, Wade, and Soliz (the "Individual Defendants"). Plaintiff asserts the following claims:

Count 1: Declaratory Judgment—Violation of Due Process Provisions of the U.S. Constitution (against the Individual Defendants);

Count 2: Violations of Procedural Due Process pursuant to 42 U.S.C. § 1983 (against UT and the Individual Defendants in their official capacities for prospective injunctive relief);

4

> Count 3: Violation of Title IX—Erroneous Outcome (against UT only);
>
> Count 4: Violation of State Law—Breach of Contract (against UT and the Individual Defendants).

For the reasons set forth in this Motion, Plaintiff's Complaint must be dismissed in its entirety.

## III. Standard of Review.

### A. The Rule 12(b)(6) standard.

A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether the complaint is plausible, the Court must interpret it in a light most favorable to the non-moving party, accept *factual* allegations as true, and give the plaintiff the benefit of reasonable inferences. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). However, the Court is not required to accept as true legal conclusions bereft of supporting factual allegations. *Iqbal*, 556 U.S. at 678.

A properly stated claim must also satisfy the pleading requirements in Fed. R. Civ. P. 8(a). This pleading standard "does not require detailed factual allegations . . . [but a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action is insufficient." *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted). Also insufficient is a complaint which "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### B. The Rule 12(b)(1) standard.

"When a defendant moves to dismiss on grounds of lack of subject matter jurisdiction, 'the plaintiff has the burden of proving jurisdiction in order to survive the motion.'" *Nichols v. Muskingum College*, 318 F.3d 674 (6th Cir. 2003) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)). When a defendant asserts that the plaintiff has not alleged sufficient facts in his complaint to demonstrate subject matter jurisdiction, the Court must take the allegations in the complaint as true. *Id*. at 677.

## IV. Analysis of Plaintiff's claims.

### A. Count 1 – Declaratory Judgment—Violation of Due Process Provisions of the U.S. Constitution (against the Individual Defendants).

Plaintiff fails to state a declaratory judgment claim. (Doc. 1, ¶¶ 140 – 154). The Sixth Circuit has held that "§ 2201 [the Declaratory Judgment Act] does not create an independent cause of action." *Davis v. United States,* 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950)); see also *Smith v. Bd. of Trustees Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 899 (N.D. Ohio 2010) ("it is axiomatic that [plaintiff] cannot assert two separate counts alleging the exact same claims"). Plaintiff's procedural due process declaratory judgment claim is exactly the same as his 42 U.S.C. § 1983 procedural due process claim against Defendants. As explained below, because Plaintiff fails to state a plausible § 1983 claim, Plaintiff's declaratory judgment claim similarly fails.

### B. Count 2 - Violations of Procedural Due Process pursuant to 42 U.S.C. § 1983 (against UT and the Individual Defendants in their official capacities for prospective injunctive relief).

Plaintiff alleges the Defendants (UT and the Individual Defendants in their official capacities) denied him procedural due process in violation of the Fifth and Fourteenth

Amendments of the U.S. Constitution. (Doc. 1, PAGEID # 2, and ¶¶ 155 – 159). Specifically, Defendants did not afford him an opportunity to cross-examine Jane Roe during the July 24, 2018 hearing. (Doc. 3-1, PAGEID # 128-129). Plaintiff fails to state a plausible 42 U.S.C. § 1983 claim on these grounds.

To establish liability under § 1983, a plaintiff must allege that a defendant is a "person" who, acting under color of state law, deprived him of rights guaranteed by federal law. *Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012). The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989). For the same reason, § 1983 claims do not lie against instrumentalities of a state, including state universities like UT. *Russell v. University of Toledo*, 537 F.3d 596, 610 (6th Cir. 2008).

Plaintiff acknowledges that UT is a state university. (Doc. 1, ¶ 11; *see also* Ohio Rev. Code § 3345.011 (defining "state university" as including the University of Toledo)). Thus, Plaintiff's § 1983 claims against UT and the Individual Defendants in their official capacities is not likely to succeed on the merits as a matter of law.

Moreover, the Eleventh Amendment to the United States Constitution, which prohibits federal courts from granting money judgments or injunctive relief against states and state agencies, also bars any suit against UT under § 1983. *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 464 (1945); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). *See also Underfer v. Univ. of Toledo,* 36 Fed. Appx. 831, 834 (6th Cir. 2002) (describing

application of Eleventh Amendment to publicly-funded Ohio universities); *Li v. Jiang,* 38 F. Supp. 3d 870, 879 (N.D. Ohio 2014) (same).

Plaintiff's § 1983 claims against the Individual Defendants in their official capacities do not meet the *Ex parte Young* exception either. In *Ex parte Young*, the United States Supreme Court held that the Eleventh Amendment did not bar a suit alleged against a state official, in his official capacity, for *prospective* injunctive relief, thereby carving out a narrow exception to sovereign immunity. *Ex parte Young*, 209 U.S. 123, 150-156 (1908). Generally speaking, for this exception to apply to Plaintiff's claims against the Individual Defendants, Plaintiff would have to be "seek[ing] prospective relief to end a continuing violation of federal law." *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013).

Plaintiff's assertions of wrongful conduct here, however, all target conduct that occurred during Plaintiff's now-vacated July 24, 2018 hearing. (Doc. 1, ¶¶ 41 - 126, prayer for relief (B) and (C)). In other words, Plaintiff's request for a declaratory judgment that the Individual Defendants' past conduct violated federal law is barred by the Eleventh Amendment and not within the *Ex parte Young* exception. *See Brown v. Strickland*, No. 2:10-CV-166, 2010 U.S. Dist. LEXIS 63878, at *10 (S.D. Ohio June 28, 2010) (citing *Green v. Mansour*, 474 U.S. 64, 67 (1985)) ("a declaratory judgment against state officials declaring that they violated federal law in the past constitutes retrospective relief, and is barred by the Eleventh Amendment."). Moreover, being that UT vacated the findings and sanctions from Plaintiff's July 24, 2018 hearing, there is no "continuing violation of federal law". *See Doe v. Cummins*, 662 Fed .Appx. 437, 447 (6th Cir. 2016) (procedural defects were cured by university's decision to vacate the finding of responsibility, and provide a second hearing) (citing *Harper v. Lee*, 938 F.2d 104, 105-06 (8th Cir. 1991) (finding that administrative reversal and grant of new disciplinary hearing rectified

any procedural deficiencies in an inmate's initial hearing)). As such, Plaintiff's claims against the Individual Defendants in their official capacities must be dismissed.

One last point, Plaintiff couples his request for declaratory relief with one requesting an injunction to prevent a re-hearing. (Doc. 1, PAGEID # 27). Plaintiff speculates that any re-hearing will be tainted with gender bias in violation of federal law. (Doc. 3, PAGEID # 117). But that is pure speculation as is any claim that he will be denied an opportunity to cross-examine witnesses at a re-hearing. *See Cummins*, 662 Fed. Appx. at 450 (quoting *Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987) ("Any alleged prejudice on the part of the [decisionmaker] must be evident from the record and cannot be based in speculation or inference.")). In other words, his claim of a "continuing violation of federal law" on that score is not ripe. A claim is not ripe if it involves "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580-81 (1985) (citation omitted); *see also Zinermon v. Burch,* 494 U.S. 113, 126 (1990); *Peloe v. Univ. of Cincinnati*, No. 1:14-cv-404, 2015 U.S. Dist. LEXIS 19776, at *18 (S.D. Ohio Feb. 19, 2015). Such is the case here. Quite simply, Plaintiff fails to state plausible § 1983 claims.

      C.      **Count 3 - Violation of Title IX—Erroneous Outcome (against UT only).**

Plaintiff alleges that the adverse outcome from his disciplinary hearing resulted from gender discrimination in violation of Title IX. (Doc. 1, ¶¶ 160 – 166; Doc. 3, PAGEID # 131-132). For an erroneous-outcome claim, a plaintiff must allege: "(1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a particularized . . . causal connection between the flawed outcome and gender bias." *Doe v. Miami Univ.*, 882 F.3d 579, 592 (6th Cir.2018) (citations omitted); *see also Marshall v. Ohio*

9

*Univ.*, No. 2:15-cv-775, 2015 U.S. Dist. LEXIS 155291, at *15 (S.D. Ohio Nov. 17, 2015) ("The gravamen of an erroneous outcome claim is that an 'innocent' person was wrongly found to have committed an offense because of his or her gender.").

For one, there is no longer an "outcome" from Plaintiff's July 24, 2018 disciplinary hearing. UT vacated the findings and sanction from that hearing. That alone makes Plaintiff's Title IX claim unlikely to succeed. *See Thomas Sysco Food Services v. Martin*, 983 F.2d 60, 62 (6th Cir. 1993) (finding no Article III case or controversy because employer's removal of discipline from employee file mooted claims).

Even if there were still an outcome, and Plaintiff is able to cast doubt on its accuracy, Plaintiff has not set forth a causal connection between the outcome and gender bias. Allegations showing a causal connection might include "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Miami Univ.*, 882 F.3d at 593 (quoting *Yusuf v. Vassar College,* 35 F.3d 709, 715 (2d Cir. 1994).

Here, Plaintiff points to general pressure on UT, unauthenticated hearsay found in newspaper articles from 2014, and UT creating a Title IX task force (Doc. 1, ¶¶ 22 – 31), but does not explain how those present a plausible claim of gender bias in the particular proceedings in his case. *See Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016) (plaintiff must set forth additional facts substantiating that federal-government influence had led to gender bias in the university's enforcement proceedings). At most, Plaintiff critiques the results of his now-vacated case. However, "one case by an individual who was subjectively dissatisfied with a result does not constitute a pattern of decision-making" that serves as a basis for finding bias. *Mallory v.*

*Ohio Univ.*, 76 Fed. Appx. 634, 640 (6th Cir. 2003). Plaintiff has not stated a plausible Title IX claim.

      **D.**      **Count 4 - Violation of State Law—Breach of Contract (against UT and the Individual Defendants).**

Plaintiff does not state a plausible breach of contract claim. (Doc. 1, ¶¶ 167 – 171; Doc. 3, PAGEID# 129 – 131). In fact, that claim fails as a matter of law.

With regard to the breach of contract claim against UT, this Court lacks subject matter jurisdiction. Section 16, Article I of the Ohio Constitution provides that "suits may be brought against the state, in such courts and in such manner as may be provided by law." In 1975, consistent with this provision, the General Assembly codified the State's waiver of sovereign immunity, but only consented to "have its liability determined in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties …." Ohio Rev. Code § 2743.02(A)(1). The Revised Code then states, specifically, "The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code…." Ohio Rev. Code § 2743.03(A)(1). Therefore, only the Ohio Court of Claims would have jurisdiction over a breach of contract claim against UT.

Moreover, Plaintiff's Ohio law breach of contract claim against UT is barred by sovereign immunity. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *Alia v. Michigan Supreme Court*, 906 F.2d 1100, 1102 (6th Cir. 1990); *Ali Al-Maqablh v. Univ. of Cincinnati College of Medicine*, No. 1:11-cv-531, 2012 U.S. Dist. LEXIS 128026, at *18 (S.D. Ohio Sep. 10, 2012) adopted by *Al-Maqablh v. Univ. of Cincinnati College of Medicine*, No. 1:11-cv-531, 2012 U.S. Dist. LEXIS 181067, at *6 (S.D. Ohio Dec. 21, 2012).

With regard to an official capacity breach of contract claim against the Individual Defendants, this Court similarly lacks subject matter jurisdiction.  The Sixth Circuit recognizes that "[i]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Heike v. Central Michigan Univ. Bd. of Trustees,* 573 Fed. Appx. 476 (6th Cir. 2014) (quoting *Alkire v. Irving,* 330 F.3d 802, 810 (6th Cir. 2003) and *Moore's Federal Practice* § 131.40[3][e][ii] (3d ed. 2014)("A government official sued in his or her official capacity is considered to be in privity with the government.")).  Therefore, "[a] suit against an individual in her or his official capacity is the equivalent of a suit against the governmental entity."  *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994).  Here, the governmental entity is UT, which is a state university under Ohio Rev. Code § 3345.011.  Therefore, the official-capacity breach of contract claim against the Individual Defendants is treated as a claim against UT, an instrumentality of the state of Ohio, and only the Ohio Court of Claims has jurisdiction over it. *See McCormick v. Miami Univ.*, 693 F.3d 654, 664-665 (6th Cir. 2012).

To the extent Plaintiff attempts to bring individual-capacity state law claims against the Individual Defendants for breach of contract, yet again, this Court lacks subject matter jurisdiction. The Court's lack of subject-matter jurisdiction over state law-based individual-capacity claims derives from two Ohio statutes: (1) Ohio Rev. Code § 9.86; and, (2) Ohio Rev. Code § 2743.02(F). Ohio Rev. Code § 9.86 confers on employees of the State of Ohio immunity from liability in civil actions arising under Ohio law.  The second statute, Ohio Rev. Code § 2743.02(F), confers exclusive jurisdiction upon the Ohio Court of Claims to make the threshold determination of whether an employee-defendant retains or forfeits that immunity in a particular case. Thus, only the Ohio Court of Claims has subject-matter jurisdiction to decide the threshold issue of whether state employees can be stripped of their § 9.86 immunity from suit in their

12

individual capacity. *See Turker v. Ohio Dept. of Rehab. & Corr.*, 157 F.3d 453, 458 (6th Cir. 1998).

Accordingly, Plaintiff may not sue the Individual Defendants for a violation of state law unless and until the Ohio Court of Claims has first determined that the employee is not, due to the malicious, reckless, or purposeful nature of his or her actions, entitled to the immunity § 9.86 provides. *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989); *see also James v. Tunnell*, 2010 U.S. Dist. LEXIS 69103, at *12 (June 15, 2010 S.D. Ohio) (same). Plaintiff has not stated plausible state law claims.

## V.   Conclusion.

For each and all of the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiff's claims against them in their entirety.

    Respectfully submitted,

    **MICHAEL DEWINE (0009181)**
    **Ohio Attorney General**

    *s/ Reid T. Caryer*
    _____
    REID T. CARYER (0079825)
    Assistant Attorney General
    Education Section
    30 E. Broad St., 16th Floor
    Columbus, Ohio 43215
    Phone:  (614) 644-7250
    Fax: (614) 644-7634
    Email: reid.caryer@ohioattorneygeneral.gov

    *Counsel for Defendants*

## CERTIFICATE OF SERVICE

  I hereby certify that the foregoing was filed electronically on October 9, 2018.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's systems.

            *s/ Reid T. Caryer*

            _____
            REID T. CARYER (0079825)
            Assistant Attorney General